IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

FILED
DEC 17 2001
IN THIS OFFICE
Clerk, U. S. District Court
Greensboro, N. C.
By_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES ANTHONY SAVAGE, | : | 1:01CR 362- 1 |
| also known as Mario J. Racanelli, | : | |
| John Racanelli, Mark Racanelli, | : | |
| Grandoni Egistot, Egisto Grandoni, | : | |
| Robert Toliano, M. John Delano, | : | |
| Greg Eric Masonotti, and Max Marrache | : | |
| MARGARET NATHALIE HANDSMAN, | : | 1:01CR 362- 2 |
| also known as Marnie Handsman, | : | SUPERSEDING |
| Margaret Racanelli, and Marnie Racanelli: | | |

The Grand Jury charges:

COUNT ONE

1.   During the period from on, about or before, November, 1996, and continuously thereafter, up to and including October, 2000, the exact dates to the Grand Jurors unknown, in the Middle District of North Carolina, and elsewhere,

> JAMES ANTHONY SAVAGE,
>     also known as Mario J. Racanelli,
>     John Racanelli, Mark Racanelli,
>     Grandoni Egistot, Egisto Grandoni,
>     Robert Toliano, M. John Delano,
>     Greg Eric Masonotti, and Max Marrache,
> MARGARET NATHALIE HANDSMAN,
>     also known as Marnie Handsman,
>     Margaret Racanelli, and Marnie Racanelli,

defendants herein, together and with divers other persons to the Grand Jurors both known and unknown, did wilfully, knowingly and unlawfully combine, conspire, confederate and agree together and

with each other to commit various offenses against the laws of the United States, to wit:

A. To use and cause to be used commercial interstate carriers and interstate wire communication facilities, (for example, the telephone system), for the purpose of implementing, executing, and completing a scheme or artifice to defraud investors, primarily single women, of money, by inducing them through false and fraudulent pretenses, representations, and promises, to invest in bogus investment "opportunities" involving spurious businesses in which JAMES ANTHONY SAVAGE was represented as being involved, in violation of Title 18, United States Code, Sections 1341 and 1343; and

B. To induce persons to travel in interstate commerce in the execution of a scheme and artifice to defraud those persons of money and property having a value of five thousand dollars ($ 5,000) or more, in violation of Title 18, United States Code, Section 2314 (paragraph 2).

2. It was an object of the Conspiracy for the Defendants, JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN, to fraudulently enrich themselves by offering, touting, and selling, and facilitating the sale of, investments in fictitious business ventures including, at an early stage of the Conspiracy, supposed wireless communications and, later on in the Conspiracy, purported transactions involving the overseas purchase of uncut gems.

- 2 -

3.   It was a further object of the Conspiracy for the Defendants, JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN, to secrete the investors' moneys in safe deposit boxes and in various tangible assets, real property, automobiles, furniture, paintings and other works of art, and jewelry, so that it would be difficult for a defrauded investor to use legal process to locate and regain control over money taken by fraud.

4.   It was a further object of the Conspiracy for the Defendants, JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN, to maintain an luxurious an ostentatious life-style using the moneys invested by earlier victims so as to project an image of financial success and thus attract additional investors.

5.   It was a further object of the Conspiracy for the Defendants, JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN, to avoid any legal process and delay legal proceedings which might limit their ability to continue to earn money through fraud.

## MANNER AND MEANS

6.   The manner and means by which the Conspiracy functioned is more particularly set forth as follows:

A.   JAMES ANTHONY SAVAGE would be and was portrayed as being involved in various ventures, which were, in fact, fictitious, including a supposed electronic communications business consisting of digital pagers and cellular telephones, a waste

- 3 -

disposal business, and purported transactions involving the overseas purchase of uncut gems.

B. JAMES ANTHONY SAVAGE would and did describe supposed financial opportunities to potential investors and claim that big profits could be earned quickly with little or no risk to the money invested.

C. JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN would and did falsely represent to potential investors that SAVAGE had substantial experience with such investments, that he was highly knowledgeable about such programs, and that SAVAGE and HANDSMAN had been financially successful through participation in such programs in the past.

D. JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN would and did establish bank accounts and lock boxes to safeguard the proceeds of the various investment frauds. HANDSMAN would and did purchase real estate in her sole name and incorporate a business, "Rich Offerings," which she represented to be a successful jewelry business, allowing her to pose as one knowledgeable in the jewelry and gem field. HANDSMAN would and did assure prospective investors that SAVAGE's representations as to a supposed investment in overseas gem markets were accurate and based upon SAVAGE's past track record of success in similar ventures.

E. JAMES ANTHONY SAVAGE would and did frequently seek to meet single women, generally older than himself, with the intent

- 4 -

that they would become romantically involved with him and thus less wary concerning the safety of monies they might invest in one of SAVAGE's business proposals.

  F.  JAMES ANTHONY SAVAGE would and did maintain a checking account at NationsBank (now Bank of America) in the name "Mario Racanelli," into which account SAVAGE repeatedly directed one investor to deposit thousands of dollars of investment money. Virtually all funds in the NationsBank/Racanelli account were proceeds of the scheme and artifice to defraud.

  G.  JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN would and did divert substantially all moneys invested into each of the fictional financial schemes and use those proceeds to live a life of luxury.

OVERT ACTS

  In furtherance of and to effect the objects of said Conspiracy and to accomplish its purposes and objects thereof,

JAMES ANTHONY SAVAGE, and<br>MARGARET NATHALIE HANDSMAN,

defendants herein, and divers other persons, both known and unknown to the Grand Jurors, did commit the following Overt Acts, among others, in the State and Middle District of North Carolina, and elsewhere:

  1.  In or about November, 1996, in Winston-Salem, in the State and Middle District of North Carolina, MARGARET NATHALIE HANDSMAN falsely denied that the man who was with her was "Mario

- 5 -

Racanelli" and instead identified JAMES ANTHONY SAVAGE as being one "James Savagio."

2. On or about or before March 30, 1997, in the State and Middle District of North Carolina, MARGARET NATHALIE HANDSMAN told law enforcement authorities, who were attempting to locate "Mario Racanelli," that he had left home and that she had no knowledge of his whereabouts.

3. In April, 1997, JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN, leased a condominium in Roswell (an Atlanta suburb), Georgia. During conversations involving the leasing of the condominium, JAMES ANTHONY SAVAGE used the alias "M. John Delano" and claimed to be the owner of a pager company.

4. On or about May 4, 1997, JAMES ANTHONY SAVAGE asked J. Foster to immediately increase her investment in his electronic communications business by five thousand and seven hundred dollars ($ 5,700) which money SAVAGE asked that J. Foster send by Federal Express (FedEx), from Forsyth County, in the State and Middle District of North Carolina, to him in Naples, Florida.

5. On or about May 22, 1997, JAMES ANTHONY SAVAGE asked J. Foster to immediately increase her investment in his electronic communications business by at least thirty thousand dollars ($ 30,000) which money SAVAGE asked that J. Foster send by FedEx, from Forsyth County, in the State and Middle District of North Carolina, to him in Roswell, Georgia.

- 6 -

6. On or about July 22, 1997, JAMES ANTHONY SAVAGE asked J. Foster to immediately increase her investment in his supposed business ventures by twenty-six thousand dollars ($ 26,000) which money J. Foster should bring with her when traveling from Forsyth County, in the State and Middle District of North Carolina, to meet him in College Park, Georgia.

7. On or about August 13, 1997, JAMES ANTHONY SAVAGE asked J. Foster to immediately increase her investment in his supposed business ventures by at least seventy three thousand and five hundred dollars ($ 73,500) which money J. Foster should bring with her when traveling from Forsyth County, in the State and Middle District of North Carolina, to meet him in College Park, Georgia.

8. On or about August 19, 1997, JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN made application for an MBNA credit card in which SAVAGE listed his name "Mario Racanelli," declared that he had been employed by Admiral Art as an art broker for twelve years, and that he was earning one hundred thousand dollars ($ 100,000) a year. HANDSMAN declared that she had been employed at The Dance Connection for ten years and was earning ninety thousand dollars ($ 90,000) per year.

9. On or about September 12, 1997, JAMES ANTHONY SAVAGE asked J. Foster to immediately increase her investment in his supposed business ventures by seventy thousand dollars ($ 70,000) which money J. Foster should bring with her when traveling from

- 7 -

Forsyth County, in the State and Middle District of North Carolina, to meet him in College Park, Georgia.

10.  On or about October 24, 1997, JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN, rented a safe deposit box, in the name of "Mario Racanelli" and MARGARET HANDSMAN, at AmSouth Bank, in St. Petersburg Beach, Florida.

11.  In early December, 1997, JAMES ANTHONY SAVAGE asked J. Foster to immediately increase her investment in his electronic communications business by at least sixteen thousand dollars ($ 16,000) which SAVAGE asked that J. Foster send by FedEx, from Forsyth County, in the State and Middle District of North Carolina, to him in Chicago, Illinois.

12.  On or about February 17, 1998, JAMES ANTHONY SAVAGE asked J. Foster to immediately increase her investment in his supposed business ventures by at least thirty-nine thousand and five hundred dollars ($ 39,500) which money J. Foster should bring with her when traveling from Forsyth County, in the State and Middle District of North Carolina, to meet him in Miami, Florida.

13.  On or about April 17, 1998, MARGARET NATHALIE HANDSMAN stated that she was a "self-employed dance consultant," with an annual income of fifty thousand dollars ($ 50,000).

14.  On or about July 6, 1998, JAMES ANTHONY SAVAGE asked J. Foster to immediately increase her investment in his supposed business venture by fifteen thousand dollars ($ 15,000) which money

- 8 -

SAVAGE asked that J. Foster send by FedEx, from Forsyth County, in the State and Middle District of North Carolina, to him in Seattle, Washington.

15.  On or about October 13, 1998, JAMES ANTHONY SAVAGE requested D. Freund to issue a check payable to MARGARET NATHALIE HANDSMAN in the amount of ten thousand dollars ($ 10,000), with the handwritten notation "fee" in the memo section of the check. At the same time, SAVAGE gave D. Freund ten thousand dollars ($ 10,000) in cash.

16.  On or about October 14, 1998, MARGARET NATHALIE HANDSMAN incorporated a business, "Rich Offerings, Inc.," with a business location in Sarasota, Florida.

17.  On or about October 23, 1998, MARGARET NATHALIE HANDSMAN opened NationsBank account number 0036 6237 7615, in Sarasota, Florida, in the name of "Rich Offerings, Inc." HANDSMAN, the sole signatory on the account, listed herself as president and secretary of the business.

18.  Between December 8 and December 10, 1998, JAMES ANTHONY SAVAGE asked J. Foster to immediately increase her investment in his supposed business ventures by at least thirty-eight thousand dollars ($ 38,000) which money SAVAGE asked that J. Foster send by FedEx, from Forsyth County, in the State and Middle District of North Carolina, to him in Park City, Utah.

- 9 -

19. On or about December 18, 1998, JAMES ANTHONY SAVAGE asked J. Foster to immediately increase her investment in his supposed business ventures by at least fifty-two thousand dollars ($ 52,000).

20. On or about December 20, 1998, JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN, rented a safe deposit box in the names of "Mario Racanelli" and MARGARET N. HANDSMAN, at NationsBank, in Sarasota, Florida.

21. On or about December 23, 1998, JAMES ANTHONY SAVAGE gave D. Freund five hundred thousand dollars ($ 500,000) in United States currency (cash) with the understanding that D. Freund would immediately wire-transfer four hundred and eighty-five thousand dollars ($ 485,000) to the NationsBank account of MARGARET NATHALIE HANDSMAN and keep the remaining fifteen thousand dollars ($ 15,000) for his trouble.

22. On or about February 2, 1999, JAMES ANTHONY SAVAGE asked J. Foster to immediately increase her investment in his supposed business ventures by at least thirty-six thousand dollars ($ 36,000) which SAVAGE asked that J. Foster send by FedEx, from Forsyth County, in the State and Middle District of North Carolina, to him in Sarasota, Florida.

23. On or about February 16, 1999, JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN purchased a mansion at the Sanderling

Club, on Siesta Key, near Sarasota, Florida, which they put solely in the name of HANDSMAN.

24. On or about February 26, 1999, MARGARET NATHALIE HANDSMAN declared that her business, "Rich Offerings, Inc.," served as brokers and consultants for jewelry and fine arts.

25. On or about April 14, 1999, JAMES ANTHONY SAVAGE directed M. Cox to draw three checks totaling seventy-nine thousand eight hundred and forty dollars ($ 79,840) payable to a Bentley luxury automobile dealer, to be used as a down payment on the purchase of a 1999 Bentley Azure convertible luxury automobile.

26. On or about April 15, and April 16, 1999, JAMES ANTHONY SAVAGE deposited two checks drawn on the "Mario Racanelli" NationsBank account, payable to M. Cox, totaling seventy-nine thousand eight hundred and forty dollars ($ 79,840) into the M. Cox bank account so that the account would have sufficient funds to cover three checks M. Cox had earlier written at SAVAGE's request.

27. On or about April 16, 1999, JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN completed the purchase of a 1999 Bentley Azure convertible luxury automobile with the proceeds of their scheme to defraud and put it in the sole name of MARGARET N. HANDSMAN.

28. On or about April 16, 1999, MARGARET NATHALIE HANDSMAN signed and verified a credit application that she was self-employed at "Rich Offerings, Inc.," as a diamond broker, that she had been

- 11 -

so employed for twelve years, and had a gross annual income through the business of four hundred thousand dollars ($ 400,000).

29.  On or about April 20, 1999, JAMES ANTHONY SAVAGE asked J. Foster to immediately increase her investment in his supposed business ventures by one hundred and fifty thousand dollars ($ 150,000) which money SAVAGE asked that J. Foster immediately transfer into his NationsBank account, in Forsyth County, in the State and Middle District of North Carolina.

30.  On or about April 23, 1999, MARGARET NATHALIE HANDSMAN deposited a NationsBank check drawn by JAMES ANTHONY SAVAGE upon an account in the name of "Mario Racanelli," in the amount of forty thousand dollars ($ 40,000).  The notation "consulting" was handwritten in the memo section of the check.

31.  On or about May 5, 1999, MARGARET NATHALIE HANDSMAN deposited a check drawn by JAMES ANTHONY SAVAGE upon the NationsBank account in the name "Mario Racanelli," in the amount of eighteen thousand dollars ($ 18,000).  The notation "private dance lesson" was handwritten in the memo section of the check.

32.  On or about June 25, 1999, MARGARET NATHALIE HANDSMAN deposited a check drawn by JAMES ANTHONY SAVAGE upon the NationsBank account in the name of "Mario Racanelli," in the amount of thirty-four thousand dollars ($ 34,000).  The notation "consulting" was handwritten in the memo section of the check.

33. On or about August 19, 1999, JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN, rented a safe deposit box in the names of "Mario Racanelli" and MARGARET N. HANDSMAN, at AmSouth Bank, in Sarasota, Florida.

34. Between November 22, 1999, and December 7, 1999, JAMES ANTHONY SAVAGE deposited monies totaling thirty-eight thousand and six hundred dollars ($ 38,600) into the M. Cox bank account so that the account would hold sufficient funds to honor two checks already drawn on the account in the same amount payable to "Mario Racanelli."

35. On or about November 23, 1999, MARGARET NATHALIE HANDSMAN deposited a check drawn by JAMES ANTHONY SAVAGE upon the NationsBank account in the name of "Mario Racanelli," in the amount of fifteen thousand dollars ($15,000). The notation "dance lesson" was handwritten in the memo section of the check.

36. Sometime shortly before December 20, 1999, JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN met with Mr. and Mrs. Huminski, to describe an investment opportunity in the purchase overseas of uncut emeralds. SAVAGE and HANDSMAN both claimed participation in earlier, lucrative uncut gem ventures.

37. On or about January 3, 2000, JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN purchased a 2000 Bentley Continental luxury automobile with the proceeds of their scheme to defraud and put it in the sole name of MARGARET N. HANDSMAN.

- 13 -

38. On or about January 20, 2000, MARGARET NATHALIE HANDSMAN opened SunTrust Bank account number 0014 000 243 876, in Sarasota, Florida, in the name of "Rich Offerings, Inc." with HANDSMAN as the sole authorized signatory on the account.

39. On or about February 15, 2000, MARGARET NATHALIE HANDSMAN told a legal process server who was attempting to locate "Mario Racanelli," at the Sanderling Club mansion, that she was not related to Racanelli, that he did not live there and that she had no idea where he lived.

40. On or about March 24, 2000, MARGARET NATHALIE HANDSMAN told law enforcement authorities who arrived at the Sanderling Club mansion asking to speak with JAMES ANTHONY SAVAGE that he was not in the house and that she did not know if "Mario Racanelli" was there, whereas in truth and in fact, as MARGARET NATHALIE HANDSMAN then well knew, JAMES ANTHONY SAVAGE was hiding in a secret room in the mansion.

41. On or about April 4, 2000, JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN caused twenty thousand dollars ($ 20,000), which moneys constituted proceeds of the scheme and artifice to defraud, to be deposited into the bank account of a Winston-Salem, North Carolina, law firm as partial payment for the legal representation of SAVAGE in civil litigation brought by one of the victims of the fraudulent investment schemes.

42. On or about April 13, 2000, MARGARET NATHALIE HANDSMAN opened Bank One account number 1006563827, in Sarasota, Florida, in the name of "Rich Offerings, Inc." and HANDSMAN was the sole authorized signatory on the account. HANDSMAN declared that "Rich Offerings, Inc." was a "jewelry wholesale business."

43. On or about April 13, 2000, JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN caused twelve thousand dollars ($ 12,000) which moneys constituted proceeds of the scheme and artifice to defraud to be wired from Detroit, Michigan, to Forsyth County, in the State and Middle District of North Carolina, as a retainer fee to a law firm representing HANDSMAN in civil litigation brought by one of the victims of the fraudulent investment schemes.

44. On or about July 24, 2000, JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN purchased and caused to be purchased thirty-six five hundred dollar Western Union Money Orders, totaling eighteen thousand dollars ($ 18,000). The source of the money used to purchase the money orders was the proceeds of the scheme and artifice to defraud.

45. On or about July 25, 2000, JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN sent and caused to be sent thirty-six five hundred dollar Western Union Money Orders, totaling eighteen thousand dollars ($ 18,000) to a law firm in Winston-Salem, in the State and Middle District of North Carolina, representing HANDSMAN

Case 1:01-cr-00362-TDS   Document 23   Filed 12/17/01   Page 15 of 62

in civil litigation brought by one of the victims of the fraudulent investment schemes.

46. On or about July 29, 2000, JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN leased a 2001 Mercedes Benz S600V luxury automobile and put it in the sole name of MARGARET N. HANDSMAN.

47. On or about July 29, 2000, MARGARET NATHALIE HANDSMAN declared on a credit application that she had been self-employed for two years, and had a yearly salary or wages of one million dollars ($ 1,000,000).

48. On or about July 29, 2000, JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN sent and caused to be sent twenty-one five hundred dollar money orders, totaling ten thousand and five hundred dollars ($ 10,500) to a law firm, in Winston-Salem, in the State and Middle District of North Carolina, representing SAVAGE in civil litigation brought by one of the victims of the fraudulent investment schemes.

49. In early August, 2000, in order to shield from legal process tangible property purchased with the proceeds of the fraud, JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN agreed to complete a fake promissory note in the amount of six hundred and sixty-seven thousand dollars ($ 667,000), which note was backdated to December 12, 1999.

50. On or about August 17, 2000, in order to shield the proceeds of the fraud from litigation alleging that JAMES ANTHONY

- 16 -

SAVAGE and MARGARET NATHALIE HANDSMAN held assets obtained by fraud, SAVAGE and HANDSMAN completed affidavits declaring that the value of their household furnishings was seventeen thousand five hundred dollars ($ 17,500), whereas, as SAVAGE and HANDSMAN then well knew, in and on the grounds of their mansion were assets worth far more than that, including a sixteen thousand dollar ($ 16,000) golf cart, thousands of dollars worth of jewelry, two Sub Zero refrigerators, three Sony Plasma flat-screen television sets worth fifteen thousand dollars apiece, paintings, dolphin statues and other works of art, a thirty-five thousand dollar ($ 35,000) mailbox with the figure of a wolf, and a thirty-five thousand dollar ($ 35,000) Steinway grand piano.

51. In early September, 2000, JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN hosted a social gathering at their Sanderling Club mansion where SAVAGE explained to a prospective investor that he was a jeweler and dealt in precious gems.

All in violation of Title 18, United States Code, Section 371.

Case 1:01-cr-00362-TDS   Document 23   Filed 12/17/01   Page 17 of 62

COUNT TWO

1.    The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One of this Indictment as if fully set forth herein.

2.    During the period from December, 1995, to on or about August 23, 2001, the exact dates to the Grand Jury unknown, in the Middle District of North Carolina, and elsewhere,

> JAMES ANTHONY SAVAGE,
>     also known as Mario J. Racanelli,
>     John Racanelli, Mark Racanelli,
>     Grandoni Egistot, Egisto Grandoni,
>     Robert Toliano, M. John Delano,
>     Greg Eric Masonotti, and Max Marrache,
> MARGARET NATHALIE HANDSMAN,
>     also known as Marnie Handsman,
>     Margaret Racanelli, and Marnie Racanelli,

defendants herein, together and with divers other persons to the Grand Jurors both known and unknown, devised and intended to devise a scheme and artifice to defraud certain persons of money by inducing them through false and fraudulent pretenses, representations and promises, to invest money in various fictitious investment schemes, and to divert the money so invested for their own use, and to continue the scheme by attracting additional investors.

3.    The scheme was to induce people to put money into fictitious investment projects which were described as yielding unusually high rates of return, so that JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN could live an extravagant lifestyle

- 18 -

using other people's money, to retain and conceal the funds taken by fraud, and to project the image of financial success to other potential targets of the fraud.

4.   It was a part of the scheme and artifice to defraud and to obtain money by false and fraudulent pretenses, representations and promises, that Defendants JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN would and did concoct elaborate and ever-changing stories about who they were, how they earned a living, and how they came by the apparent wealth which they displayed.

5.   It was further a part of the scheme and artifice to defraud that JAMES ANTHONY SAVAGE, in an attempt to create a mystique about his past, would and did use the name "Mario Racanelli," and invent a fictitious life history with fake details which included that his family was involved in organized crime, that he was a native of Sicily, that his parents were either living abroad or had been killed in a car accident, that he was independently wealthy and that his two sisters were attorneys employed by the Federal Bureau of Investigation.

6.   It was further a part of the scheme and artifice to defraud that JAMES ANTHONY SAVAGE would and did obtain and use false identification documents in various names, including counterfeit Canadian driver's licenses in the names of "Egistot Grandoni," "Robert Toliano" and "Max Marrache" and a Florida counterfeit driver's license in the name of "Mario Racanelli."

SAVAGE also would and did use social security numbers not assigned to him.

7. It was further a part of the scheme and artifice to defraud that in order to lure potential investors, JAMES ANTHONY SAVAGE would and did describe spectacular and fictional tales of past personal business successes and adventures. He would and did inform prospective investors that he had been involved in a paving business, a gem mine, a chain of jewelry stores, and a chain of currency exchanges. On occasion he would and did claim to be involved in some type of wireless communication business, involving either a cellular telephone company or a pager company, which business had glowing prospects for future financial success.

8. It was further a part of the scheme and artifice to defraud that on occasion JAMES ANTHONY SAVAGE would and did falsely inform prospective investors that he was involved in some emerald, diamond, and other precious gem investment in which he could buy uncut gems wholesale in a foreign country, get them cut in the United States, and reap staggering profits from the transaction.

9. It was further a part of the scheme and artifice to defraud that JAMES ANTHONY SAVAGE would and did frequently woo older single women and widows, so that their independent judgment as to the risks of investing in one of SAVAGE's business opportunities would be clouded by their romantic feelings.

10. It was further a part of the scheme and artifice to defraud that JAMES ANTHONY SAVAGE would and did profess an interest in ballroom dancing as a means to meet one particular single, older, wealthy woman whom he had targeted as a potential victim of various of the fraudulent schemes.

11. It was further a part of the scheme and artifice to defraud that JAMES ANTHONY SAVAGE would and did repeatedly inform an investor on numerous occasions that some unexpected crisis or emergency had arisen with respect to the supposed business venture in which that investor had already put money, and that unless additional funds were immediately sent to him, the entire venture would fail and all previous moneys invested would be lost.

12. It was further a part of the scheme and artifice to defraud that JAMES ANTHONY SAVAGE would and did advise both prospective and current investors how they might raise money to put into one of his fictitious investments, by opening or running up lines of credit, and getting relatives to put in additional money.

13. It was further a part of the scheme and artifice to defraud that JAMES ANTHONY SAVAGE would and did induce investors to cosign applications for credit cards or to get credit cards in his name and to pay the monthly charges he incurred on the accounts.

14. It was further a part of the scheme and artifice to defraud that MARGARET NATHALIE HANDSMAN would and did purport to own and run a boutique Florida business named "Rich Offerings," so

- 21 -

as to have some apparent legitimate occupation and source of income.

15. It was further a part of the scheme and artifice to defraud that MARGARET NATHALIE HANDSMAN would and did play the role of the wife of a well-to-do, successful businessman, and encourage others to trust SAVAGE's judgment as to investment matters.

16. It was further a part of the scheme and artifice to defraud that, on occasions, MARGARET NATHALIE HANDSMAN would and did inform certain potential investors that SAVAGE had personal familiarity with whatever particular fictitious investment SAVAGE and HANDSMAN were attempting to market at the time and that they (SAVAGE and HANDSMAN) themselves had realized extraordinary profits through earlier experiences with the same investment.

17. It was further a part of the scheme and artifice to defraud that JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN would and did divert the funds entrusted to SAVAGE by investors in the fictitious schemes for their personal use and other purposes totally unrelated to any investment in any of the fictional business opportunities.

18. It was further a part of the scheme and artifice to defraud that JAMES ANTHONY SAVAGE would and did write substantial checks payable to HANDSMAN for supposed 'dance lessons' and 'consulting' fees.

- 22 -

19. It was further a part of the scheme and artifice to defraud that JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN would and did use the proceeds from defrauding one investor to purchase, in HANDSMAN's name, a mansion in Siesta Key, which is a private housing development on the Florida coast. The mansion was purchased, in part, so that SAVAGE and HANDSMAN could appear financially successful, in order to lure additional prospective investors.

20. It was further a part of the scheme and artifice to defraud that JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN would and did also lease a condominium at Sunny Isles Beach, (near Miami) Florida, so as to appear financially successful to additional prospective investors.

21. It was further a part of the scheme and artifice to defraud that JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN would and did establish mail drops for the receipt of correspondence and to generate the appearance of legitimacy, in Sarasota, Florida, Hendersonville, North Carolina, Roswell, Georgia, and Sunny Isles, Florida. The use of the mail services also was intended to make it more difficult for defrauded investors to locate SAVAGE and HANDSMAN and the proceeds of the scheme to defraud.

22. It was further a part of the scheme and artifice to defraud that JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN

- 23 -

would and did contract for a phone answering service and the receipt of mail for their supposed business, Rich Offerings, in Sarasota, Florida, so as to appear legitimate and financially successful to additional prospective investors.

23. It was further a part of the scheme and artifice to defraud that JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN would and did purchase luxury automobiles, such as several Mercedes and two Bentleys, to appear financially successful to prospective investors.

24. It was further a part of the scheme and artifice to defraud that JAMES ANTHONY SAVAGE would and did on occasion rent stretch limousines so as to appear financially carefree to prospective investors.

25. It was further a part of the scheme and artifice to defraud that JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN would and did purchase expensive, flashy jewelry such as rings, diamond necklaces, earrings, and Rolex watches, to maintain and project the aura of wealth to prospective investors.

26. It was further a part of the scheme and artifice to defraud that JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN would and did maintain large caches of United States currency (cash) so as to appear financially successful to prospective investors, to have immediate access to resources in the event of an emergency, and to conceal the source of those funds.

27. It was further a part of the scheme and artifice to defraud that JAMES ANTHONY SAVAGE would and did open a bank account in the Caribbean, in Nevis, West Indies, so as to have immediate access to financial resources in the event of an emergency and to conceal the ownership and location of funds taken by fraud.

28. It was further a part of the scheme and artifice to defraud that JAMES ANTHONY SAVAGE would and did provide to an investor wiring instructions for a bank account in Nevis, West Indies, and direct that investor to wire approximately four hundred thousand dollars ($ 400,000) to that account.

29. It was further a part of the scheme and artifice to defraud that JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN, when traveling, would and did stay at posh hotels, such as those in Trump International Hotel and Tower, the Four Seasons, and the Ritz Carlton, so as to appear financially successful to prospective investors.

30. It was further a part of the scheme and artifice to defraud that JAMES ANTHONY SAVAGE would and did travel to Greenville, South Carolina, Atlanta, Georgia, New York City and Islip, New York, Philadelphia, Pennsylvania, and Port Huron, Michigan, to meet with victims of the investment schemes who would hand over to him checks or large amounts of United States currency(cash) with the expectation that the money would be invested in one of the proposed business opportunities.

- 25 -

31. On or about May 22, 1997, in the County of Forsyth, in the State and Middle District of North Carolina,

JAMES ANTHONY SAVAGE and
MARGARET NATHALIE HANDSMAN,

defendants herein, having devised and intended to devise the aforesaid scheme and artifice to defraud, did knowingly and wilfully execute the scheme and artifice to defraud, in that they did knowingly cause to be sent and delivered by a commercial interstate carrier, namely, FedEx, according to the directions thereon, a package addressed to:

Mario Racanelli
The Budgetel Inn
575 Old Holcomb Bridge Rd
Roswell, Ga 30076

containing United States currency (cash) in the approximate sum of thirty-one thousand dollars, ($ 31,000).

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT THREE

1. The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One and Paragraphs Two through Thirty of Count Two of this Indictment as if fully set forth herein.

2. On or about October 6, 1997, in the County of Forsyth, in the State and Middle District of North Carolina,

JAMES ANTHONY SAVAGE and
MARGARET NATHALIE HANDSMAN,

defendants herein, having devised and intended to devise the aforesaid scheme and artifice to defraud, did knowingly and wilfully execute the scheme and artifice to defraud, in that they did knowingly cause to be sent and delivered by a commercial interstate carrier, namely, FedEx, according to the directions thereon, a package addressed to:

Mario J. Racanelli
The Budgetel Inn
575 Old Holcomb Bridge Rd
Roswell, Ga 30076

containing money in the approximate sum of twenty-six thousand dollars, ($ 26,000).

All in violation of Title 18, United States Code, Sections 1341 and 2.

Case 1:01-cr-00362-TDS   Document 23   Filed 12/17/01   Page 27 of 62

## COUNT FOUR

1.     The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One and Paragraphs Two through Thirty of Count Two of this Indictment as if fully set forth herein.

2.     On or about October 15, 1997, in the County of Forsyth, in the State and Middle District of North Carolina,

> JAMES ANTHONY SAVAGE and
> MARGARET NATHALIE HANDSMAN,

defendants herein, having devised and intended to devise the aforesaid scheme and artifice to defraud, did knowingly and wilfully execute the scheme and artifice to defraud, in that they did  knowingly cause to be sent and delivered by a commercial interstate carrier, namely, FedEx, according to the directions thereon, a package addressed to:

> Mario J. Racanelli
> The Budgetel Inn
> 575 Old Holcomb Bridge Rd
> Roswell, Ga 30076

containing United States currency (cash) in the approximate sum of eleven thousand dollars, ($ 11,000).

All in violation of Title 18, United States Code, Sections 1341 and 2.

Case 1:01-cr-00362-TDS   Document 23   Filed 12/17/01   Page 28 of 62

## COUNT FIVE

1.   The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One and Paragraphs Two through Thirty of Count Two of this Indictment as if fully set forth herein.

2.   On or about February 26, 1998, in the County of Forsyth, in the State and Middle District of North Carolina,

JAMES ANTHONY SAVAGE and
MARGARET NATHALIE HANDSMAN,

defendants herein, having devised and intended to devise the aforesaid scheme and artifice to defraud, did knowingly and wilfully execute the scheme and artifice to defraud, in that they did knowingly cause to be sent and delivered by a commercial interstate carrier, namely, FedEx, according to the directions thereon, a two packages addressed to:

Mario J. Racanelli
Hampton Inn
5000 N. Tamiami Trail
Sarasota, Fla 34234

containing United States currency (cash) in the total approximate sum of seventy-four thousand dollars, ($ 74,000). All in violation of Title 18, United States Code, Sections 1341 and 2.

- 29 -

## COUNT SIX

1.  The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One and Paragraphs Two through Thirty of Count Two of this Indictment as if fully set forth herein.

2.  On or about March 19, 1998, in the County of Forsyth, in the State and Middle District of North Carolina,

JAMES ANTHONY SAVAGE and
MARGARET NATHALIE HANDSMAN,

defendants herein, having devised and intended to devise the aforesaid scheme and artifice to defraud, did knowingly and wilfully execute the scheme and artifice to defraud, in that they did knowingly cause to be sent and delivered by a commercial interstate carrier, namely, FedEx, according to the directions thereon, a package addressed to:

Mario J. Racanelli
Hampton Inn
5000 N. Tamiami Trail
Sarasota, Fla 34234

containing United States currency (cash) in the approximate sum of seventeen thousand dollars, ($ 17,000).

All in violation of Title 18, United States Code, Sections 1341 and 2.

Case 1:01-cr-00362-TDS   Document 23   Filed 12/17/01   Page 30 of 62

## COUNT SEVEN

1.  The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One and Paragraphs Two through Thirty of Count Two of this Indictment as if fully set forth herein.

2.  On or about August 6, 1998, in the County of Forsyth, in the State and Middle District of North Carolina,

JAMES ANTHONY SAVAGE and
MARGARET NATHALIE HANDSMAN,

defendants herein, having devised and intended to devise the aforesaid scheme and artifice to defraud, did knowingly and wilfully execute the scheme and artifice to defraud, in that they did knowingly cause to be sent and delivered by a commercial interstate carrier, namely, FedEx, according to the directions thereon, a package addressed to:

> Mario J. Racanelli
> Peabody Hotel-Orlando
> 9801 International Drive
> Orlando, Fla 32819

containing United States currency (cash) in the approximate sum of twenty-six thousand dollars, ($ 26,000).

All in violation of Title 18, United States Code, Sections 1341 and 2.

Case 1:01-cr-00362-TDS   Document 23   Filed 12/17/01   Page 31 of 62

## COUNT EIGHT

1.  The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One and Paragraphs Two through Thirty of Count Two of this Indictment as if fully set forth herein.

2.  On or about August 20, 1998, in the County of Forsyth, in the State and Middle District of North Carolina,

> JAMES ANTHONY SAVAGE and
> MARGARET NATHALIE HANDSMAN,

defendants herein, having devised and intended to devise the aforesaid scheme and artifice to defraud, did knowingly and wilfully execute the scheme and artifice to defraud, in that they did knowingly cause to be sent and delivered by a commercial interstate carrier, namely, FedEx, according to the directions thereon, a package addressed to:

> Mario J. Racanelli
> The Essex House
> 160 Central Park South
> New York, NY 10019

containing United States currency (cash) in the approximate sum of one hundred and ten thousand dollars, ($ 110,000).

All in violation of Title 18, United States Code, Sections 1341 and 2.

- 32 -

## COUNT NINE

1.    The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One and Paragraphs Two through Thirty of Count Two of this Indictment as if fully set forth herein.

2.    On or about August 21, 1998, in the County of Forsyth, in the State and Middle District of North Carolina,

JAMES ANTHONY SAVAGE and
MARGARET NATHALIE HANDSMAN,

defendants herein, having devised and intended to devise the aforesaid scheme and artifice to defraud, did knowingly and wilfully execute the scheme and artifice to defraud, in that they did knowingly cause to be sent and delivered by a commercial interstate carrier, namely, FedEx, according to the directions thereon, a package addressed to:

Mario J. Racanelli
The Carlyle Hotel
35 East 76th Street
New York, NY 10021

containing United States currency (cash) in the approximate sum of fifty thousand dollars, ($ 50,000).

All in violation  of Title 18, United States Code, Sections 1341 and 2.

- 33 -

## COUNT TEN

1.  The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One and Paragraphs Two through Thirty of Count Two of this Indictment as if fully set forth herein.

2.  Between December 8 and December 10, 1998, in the County of Forsyth, in the State and Middle District of North Carolina,

JAMES ANTHONY SAVAGE and
MARGARET NATHALIE HANDSMAN,

defendants herein, having devised and intended to devise the aforesaid scheme and artifice to defraud, did knowingly and wilfully execute the scheme and artifice to defraud, in that they did knowingly cause to be sent and delivered by a commercial interstate carrier, namely, FedEx, according to the directions thereon, a package addressed to:

Mario Racanelli
Radisson Resort Park City
2121 Park Avenue
Park City, UT 84060

containing United States currency (cash) in the approximate sum of thirty-eight thousand dollars, ($ 38,000).

All in violation of Title 18, United States Code, Sections 1341 and 2.

Case 1:01-cr-00362-TDS   Document 23   Filed 12/17/01   Page 34 of 62

## COUNT ELEVEN

1. The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One and Paragraphs Two through Twenty-nine of Count Two of this Indictment as if fully set forth herein.

2. On or about October 13 and October 14, 1998,

JAMES ANTHONY SAVAGE and
MARGARET NATHALIE HANDSMAN,

defendants herein, having devised a scheme and artifice to defraud and to obtain money by false pretenses, representations, and promises, knowingly did transmit and cause to be transmitted by means of wire and radio communications, that is, telephone calls, from Bradenton, Florida, and Atlanta, Georgia, to Forsyth County, in the State and Middle District of North Carolina, signs, signals and sounds, namely, conversations, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do, with the goal of inducing and cajoling a female investor to deposit approximately of twenty-nine thousand dollars, ($ 29,000), into a NationsBank (now Bank of America) account maintained by JAMES ANTHONY SAVAGE in the name of "Mario Racanelli."

All in violation of Title 18, United States Code, Sections 1343 and 2.

Case 1:01-cr-00362-TDS   Document 23   Filed 12/17/01   Page 35 of 62

## COUNT TWELVE

1.    The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One and Paragraphs Two through Twenty-nine of Count Two of this Indictment as if fully set forth herein.

2.    Between February 27, 1999, and March 2, 1999,

JAMES ANTHONY SAVAGE and
MARGARET NATHALIE HANDSMAN,

defendants herein, having devised a scheme and artifice to defraud and to obtain money by false pretenses, representations, and promises, knowingly did transmit and cause to be transmitted by means of wire and radio communications, that is, telephone calls, between Naples, Florida, and Forsyth County, in the State and Middle District of North Carolina, signs, signals and sounds, namely, conversations, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do, with the goal of inducing and cajoling a female investor to deposit approximately of sixty thousand dollars, ($ 60,000), into a NationsBank (now Bank of America) account maintained by JAMES ANTHONY SAVAGE in the name of "Mario Racanelli."

All in violation of Title 18, United States Code, Sections 1343 and 2.

- 36 -

## COUNT THIRTEEN

1.    The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One and Paragraphs Two through Twenty-nine of Count Two of this Indictment as if fully set forth herein.

2.    On or about April 20, 1999,

JAMES ANTHONY SAVAGE and
MARGARET NATHALIE HANDSMAN,

defendants herein, having devised a scheme and artifice to defraud and to obtain money by false pretenses, representations, and promises, knowingly did transmit and cause to be transmitted by means of wire and radio communications, that is, telephone calls, between Sarasota, Florida, and Forsyth County, in the State and Middle District of North Carolina, signs, signals and sounds, namely, conversations, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do, with the goal of inducing and cajoling a female investor to deposit approximately of one hundred and fifty thousand dollars, ($ 150,000), into a NationsBank (now Bank of America) account maintained by JAMES ANTHONY SAVAGE in the name of "Mario Racanelli."

All in violation of Title 18, United States Code, Sections 1343 and 2.

Case 1:01-cr-00362-TDS   Document 23   Filed 12/17/01   Page 37 of 62

## COUNT FOURTEEN

1.    The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One and Paragraphs Two through Twenty-nine of Count Two of this Indictment as if fully set forth herein.

2.    On or about May 5, 1999,

JAMES ANTHONY SAVAGE and
MARGARET NATHALIE HANDSMAN,

defendants herein, having devised a scheme and artifice to defraud and to obtain money by false pretenses, representations, and promises, knowingly did transmit and cause to be transmitted by means of wire and radio communications, that is, telephone calls, between Sarasota, Florida and Forsyth County, in the State and Middle District of North Carolina, signs, signals and sounds, namely, conversations, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do, with the goal of inducing and cajoling a female investor to deposit at least one hundred and forty-seven thousand dollars, ($ 147,000), into a NationsBank (now Bank of America) account maintained by JAMES ANTHONY SAVAGE in the name of "Mario Racanelli."

All in violation of Title 18, United States Code, Sections 1343 and 2.

- 38 -

## COUNT FIFTEEN

1.    The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One and Paragraphs Two through Twenty-nine of Count Two of this Indictment as if fully set forth herein.

2.    On or about November 6, 1999,

JAMES ANTHONY SAVAGE and
MARGARET NATHALIE HANDSMAN,

defendants herein, having devised a scheme and artifice to defraud and to obtain money by false pretenses, representations, and promises, knowingly did transmit and cause to be transmitted by means of wire and radio communications, that is, telephone calls, between Sarasota, Florida, and Forsyth County, in the State and Middle District of North Carolina, signs, signals and sounds, namely, conversations, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do, with the goal of inducing and cajoling a female victim to invest an additional one hundred and fifty thousand dollars ($ 150,000) into his schemes because if she refused to do so, her entire fortune invested to date, exceeding five million dollars ($ 5,000,000), would be lost.

All in violation of Title 18, United States Code, Sections 1343 and 2.

- 39 -

## COUNT SIXTEEN

1.    The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One and Paragraphs Two through Twenty-nine of Count Two of this Indictment as if fully set forth herein.

2.    On or about August 13, 1997,

> JAMES ANTHONY SAVAGE and
> MARGARET NATHALIE HANDSMAN,

defendants herein, having devised a scheme and artifice to defraud and to obtain money by false pretenses, representations, and promises did induce J. Foster to travel in interstate commerce, from Forsyth County, in the State and Middle District of North Carolina, to College Park, Georgia, in the execution of said scheme and artifice to defraud said person of money having a value of $5,000 or more, so that J. Foster could personally deliver United States currency (cash) in the approximate sum of seventy-three thousand and five hundred dollars, ($ 73,500), to JAMES ANTHONY SAVAGE; in violation of Title 18, United States Code, Sections 2314 and 2.

Case 1:01-cr-00362-TDS   Document 23   Filed 12/17/01   Page 40 of 62

## COUNT SEVENTEEN

1.    The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One and Paragraphs Two through Twenty-nine of Count Two of this Indictment as if fully set forth herein.

2.    On or about September 12, 1997,

JAMES ANTHONY SAVAGE and
MARGARET NATHALIE HANDSMAN,

defendants herein, having devised a scheme and artifice to defraud and to obtain money by false pretenses, representations, and promises did induce J. Foster to travel in interstate commerce, from Forsyth County, in the State and Middle District of North Carolina, to College Park, Georgia, in the execution of said scheme and artifice to defraud said person of money having a value of $5,000 or more, so that J. Foster could personally deliver money in the approximate sum of seventy thousand dollars, ($ 70,000), to JAMES ANTHONY SAVAGE; in violation of Title 18, United States Code, Sections 2314 and 2.

- 41 -

## COUNT EIGHTEEN

1.    The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One and Paragraphs Two through Twenty-nine of Count Two of this Indictment as if fully set forth herein.

2.    On or about February 18, 1998,

    JAMES ANTHONY SAVAGE and
    MARGARET NATHALIE HANDSMAN,

defendants herein, having devised a scheme and artifice to defraud and to obtain money by false pretenses, representations, and promises did induce J. Foster to travel in interstate commerce, from Forsyth County, in the State and Middle District of North Carolina, to Miami, Florida, in the execution of said scheme and artifice to defraud said person of money having a value of $5,000 or more, so that J. Foster could personally deliver money in the approximate sum of thirty-nine thousand and five hundred dollars, ($ 39,500), to JAMES ANTHONY SAVAGE; in violation of Title 18, United States Code, Sections 2314 and 2.

- 42 -

## COUNT NINETEEN

1.    The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One and Paragraphs Two through Twenty-nine of Count Two of this Indictment as if fully set forth herein.

2.    On or about March 11, 1998,

JAMES ANTHONY SAVAGE and
MARGARET NATHALIE HANDSMAN,

defendants herein, having devised a scheme and artifice to defraud and to obtain money by false pretenses, representations, and promises did induce J. Foster to travel in interstate commerce, from Forsyth County, in the State and Middle District of North Carolina, to Tampa, Florida, in the execution of said scheme and artifice to defraud said person of money having a value of $5,000 or more, so that J. Foster could personally deliver United States currency (cash) in the approximate sum of seventy thousand dollars, ($ 70,000), to JAMES ANTHONY SAVAGE; in violation of Title 18, United States Code, Sections 2314 and 2.

- 43 -

## COUNT TWENTY

1.    The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One and Paragraphs Two through Twenty-nine of Count Two of this Indictment as if fully set forth herein.

2.    On or about July 17, 1998,

        JAMES ANTHONY SAVAGE and
        MARGARET NATHALIE HANDSMAN,

defendants herein, having devised a scheme and artifice to defraud and to obtain money by false pretenses, representations, and promises did induce J. Foster to travel in interstate commerce, from Forsyth County, in the State and Middle District of North Carolina, to New York City, in the execution of said scheme and artifice to defraud said person of money having a value of $5,000 or more, so that J. Foster could personally deliver United States currency (cash) in the approximate sum of fifty-six thousand dollars, ($ 56,000), to JAMES ANTHONY SAVAGE; in violation of Title 18, United States Code, Sections 2314 and 2.

- 44 -

## COUNT TWENTY-ONE

1. The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One and Paragraphs Two through Twenty-nine of Count Two of this Indictment as if fully set forth herein.

2. On or about September 25, 1998,

> JAMES ANTHONY SAVAGE and
> MARGARET NATHALIE HANDSMAN,

defendants herein, having devised a scheme and artifice to defraud and to obtain money by false pretenses, representations, and promises did induce J. Foster to travel in interstate commerce, from Forsyth County, in the State and Middle District of North Carolina, to Philadelphia, Pennsylvania, in the execution of said scheme and artifice to defraud said person of money having a value of $5,000 or more, so that J. Foster could personally deliver United States currency (cash) in the approximate sum of forty-one thousand five hundred dollars, ($ 41,500), to JAMES ANTHONY SAVAGE; in violation of Title 18, United States Code, Sections 2314 and 2.

Case 1:01-cr-00362-TDS   Document 23   Filed 12/17/01   Page 45 of 62

## COUNT TWENTY-TWO

1. The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One and Paragraphs Two through Twenty-nine of Count Two of this Indictment as if fully set forth herein.

2. On or about November 5, 1998,

JAMES ANTHONY SAVAGE and
MARGARET NATHALIE HANDSMAN,

defendants herein, having devised a scheme and artifice to defraud and to obtain money by false pretenses, representations, and promises did induce J. Foster to travel in interstate commerce, from Forsyth County, in the State and Middle District of North Carolina, to Houston, Texas, in the execution of said scheme and artifice to defraud said person of money having a value of $5,000 or more, so that J. Foster could personally deliver United States currency (cash) in the approximate sum of eighty-one thousand dollars, ($ 81,000), to JAMES ANTHONY SAVAGE; in violation of Title 18, United States Code, Sections 2314 and 2.

Case 1:01-cr-00362-TDS   Document 23   Filed 12/17/01   Page 46 of 62

## COUNT TWENTY-THREE

1.    The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One and Paragraphs Two through Twenty-nine of Count Two of this Indictment as if fully set forth herein.

2.    On or about February 18, 1999,

JAMES ANTHONY SAVAGE and
MARGARET NATHALIE HANDSMAN,

defendants herein, having devised a scheme and artifice to defraud and to obtain money by false pretenses, representations, and promises did induce J. Foster to travel in interstate commerce, from Forsyth County, in the State and Middle District of North Carolina, to Denver, Colorado, in the execution of said scheme and artifice to defraud said person of money having a value of $5,000 or more, so that J. Foster could personally deliver United States currency (cash) in the approximate sum of eighty-four thousand dollars, ($ 84,000), to JAMES ANTHONY SAVAGE; in violation of Title 18, United States Code, Sections 2314 and 2.

Case 1:01-cr-00362-TDS   Document 23   Filed 12/17/01   Page 47 of 62

## COUNT TWENTY-FOUR

1.  The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One and Paragraphs Two through Twenty-nine of Count Two of this Indictment as if fully set forth herein.

2.  On or about May 11, 1999,

> JAMES ANTHONY SAVAGE and
> MARGARET NATHALIE HANDSMAN,

defendants herein, having devised a scheme and artifice to defraud and to obtain money by false pretenses, representations, and promises did induce J. Foster to travel in interstate commerce, from Forsyth County, in the State and Middle District of North Carolina, to Sarasota, Florida, in the execution of said scheme and artifice to defraud said person of money having a value of $5,000 or more, so that J. Foster could personally deliver checks payable to "Mario Racanelli" totaling approximately two hundred and ten thousand dollars, ($ 210,000), to JAMES ANTHONY SAVAGE; in violation of Title 18, United States Code, Sections 2314 and 2.

Case 1:01-cr-00362-TDS   Document 23   Filed 12/17/01   Page 48 of 62

## COUNT TWENTY-FIVE

1.   The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One and Paragraphs Two through Twenty-nine of Count Two of this Indictment as if fully set forth herein.

2.   On or about July 9, 1999,

JAMES ANTHONY SAVAGE and
MARGARET NATHALIE HANDSMAN,

defendants herein, having devised a scheme and artifice to defraud and to obtain money by false pretenses, representations, and promises did induce J. Foster to travel in interstate commerce, from Forsyth County, in the State and Middle District of North Carolina, to Boston, Massachusetts, in the execution of said scheme and artifice to defraud said person of money having a value of $5,000 or more, so that J. Foster could personally deliver United States currency (cash) in the approximate sum of forty-five thousand dollars, ($ 45,000), to JAMES ANTHONY SAVAGE; in violation of Title 18, United States Code, Sections 2314 and 2.

- 49 -

## COUNT TWENTY-SIX

1.    The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One and Paragraphs Two through Twenty-nine of Count Two of this Indictment as if fully set forth herein.

2.    At all times material to this Indictment, First Union National Bank and Branch Banking and Trust Company (BB&T) were financial institutions within the meaning of Title 18, United States Code, Section 1956 and Title 31, United States Codes, Section 5312.

3.    The Conspiracy alleged in Count One of this Indictment constituted, at least in part, a scheme and artifice to defraud and to obtain money by false and fraudulent pretenses, representations and promises which scheme used commercial interstate carriers and wire and radio communication facilities in interstate commerce, and a scheme to cause the travel of persons in interstate commerce in the execution of the said scheme to defraud, in violation of Title 18, United States Code, sections 1341, 1343, and 2314.

4.    On or about April 4, 2000, in the County of Forsyth, in the State and Middle District of North Carolina,  JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN, defendants herein, together and with divers other persons to the Grand Jurors both known and unknown, knowingly engaged in a monetary transaction affecting interstate commerce, by, through and to a financial institution, in

- 50 -

criminally derived property of a value of over $10,000, derived from specified unlawful activity, namely mail fraud and wire fraud, and inducing the travel of persons in interstate commerce in the execution of a scheme to defraud, by causing the deposit of twenty thousand dollars ($ 20,000) into a Winston-Salem, North Carolina law firm's bank account, BB&T account number 5118542098.

All in violation of Title 18, United States Code, Sections 1957(a) and 2.

Case 1:01-cr-00362-TDS   Document 23   Filed 12/17/01   Page 51 of 62

## COUNT TWENTY-SEVEN

1.    The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One, Paragraphs Two through Twenty-nine of Count Two, and Paragraphs Two and Three of Count Twenty-Six of this Indictment as if fully set forth herein.

2.    On or about April 13, 2000, in the County of Forsyth, in the State and Middle District of North Carolina,

> JAMES ANTHONY SAVAGE, and
> MARGARET NATHALIE HANDSMAN,

defendants herein, together and with divers other persons to the Grand Jurors both known and unknown, knowingly engaged and attempted to engage in a monetary transaction affecting interstate commerce, by, through and to a financial institution, in criminally derived property of a value of over $10,000, derived from specified unlawful activity, namely mail fraud and wire fraud, and inducing the travel of persons in interstate commerce in the execution of a scheme to defraud, by causing the deposit of twelve thousand dollars ($ 12,000) which was wired from Detroit, Michigan, into a Winston-Salem, North Carolina law firm's Trust Account, account number 2071883169726 at First Union National Bank.

All in violation of Title 18, United States Code, Sections 1957(a) and 2.

- 52 -

## COUNT TWENTY-EIGHT

1. The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One, Paragraphs Two through Twenty-nine of Count Two, and Paragraphs Two and Three of Count Twenty-Six of this Indictment as if fully set forth herein.

2. On or about July 26, 2000, in the County of Forsyth, in the State and Middle District of North Carolina,

JAMES ANTHONY SAVAGE, and
MARGARET NATHALIE HANDSMAN,

defendants herein, together and with divers other persons to the Grand Jurors both known and unknown, knowingly engaged and attempted to engage in a monetary transaction affecting interstate commerce, by, through and to a financial institution, in criminally derived property of a value of over $10,000, derived from specified unlawful activity, namely mail fraud and wire fraud, and inducing the travel of persons in interstate commerce in the execution of a scheme to defraud, by causing the deposit of eighteen thousand dollars ($ 18,000) into a Winston-Salem, North Carolina law firm's Trust Account, account number 2071883169726 at First Union National Bank.

All in violation of Title 18, United States Code, Sections 1957(a) and 2.

Case 1:01-cr-00362-TDS   Document 23   Filed 12/17/01   Page 53 of 62

## COUNT TWENTY-NINE

1.   The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One, Paragraphs Two through Twenty-nine of Count Two, and Paragraphs Two and Three of Count Twenty-Six of this Indictment as if fully set forth herein.

2.   On or about July 31, 2000, in the County of Forsyth, in the State and Middle District of North Carolina,

JAMES ANTHONY SAVAGE, and
MARGARET NATHALIE HANDSMAN,

defendants herein, together and with divers other persons to the Grand Jurors both known and unknown, knowingly engaged in a monetary transaction affecting interstate commerce, by, through and to a financial institution, in criminally derived property of a value of over $10,000, derived from specified unlawful activity, namely mail fraud and wire fraud, and inducing the travel of persons in interstate commerce in the execution of a scheme to defraud, by causing the deposit of ten thousand and five hundred dollars ($ 10,500) into a Winston-Salem, North Carolina law firm's bank account, BB&T account number 5118542098.

All in violation of Title 18, United States Code, Sections 1957(a) and 2.

Case 1:01-cr-00362-TDS   Document 23   Filed 12/17/01   Page 54 of 62

COUNT THIRTY

1.   The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One, Paragraphs Two through Twenty-nine of Count Two, and Paragraphs Two and Three of Count Twenty-Six of this Indictment as if fully set forth herein.

2.   On or about October 11, 2000, in the County of Forsyth, in the State and Middle District of North Carolina,  JAMES ANTHONY SAVAGE, defendant herein, together and with divers other persons to the Grand Jurors both known and unknown, knowingly engaged in a monetary transaction affecting interstate commerce, by, through and to a financial institution, in criminally derived property of a value of over $10,000, derived from specified unlawful activity, namely mail fraud and wire fraud, and inducing the travel of persons in interstate commerce in the execution of a scheme to defraud, by causing the deposit of fifteen thousand dollars ($ 15,000) into a Winston-Salem, North Carolina law firm's bank account, BB&T account number 5118539127.

All in violation of Title 18, United States Code, Sections 1957(a) and 2.

Case 1:01-cr-00362-TDS   Document 23   Filed 12/17/01   Page 55 of 62

## COUNT THIRTY-ONE

1.   The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One, Paragraphs Two through Twenty-nine of Count Two, and Paragraphs Two and Three of Count Twenty-Six of this Indictment as if fully set forth herein.

2.   On or about December 8, 2000, in the County of Forsyth, in the State and Middle District of North Carolina, JAMES ANTHONY SAVAGE, defendant herein, together and with divers other persons to the Grand Jurors both known and unknown, knowingly engaged in a monetary transaction affecting interstate commerce, by, through and to a financial institution, in criminally derived property of a value of over $10,000, derived from specified unlawful activity, namely mail fraud and wire fraud, and inducing the travel of persons in interstate commerce in the execution of a scheme to defraud, by causing the deposit of twelve thousand dollars ($ 12,000) into a Winston-Salem, North Carolina law firm's bank account, BB&T account number 5118542098.

All in violation of Title 18, United States Code, Sections 1957(a) and 2.

- 56 -

Case 1:01-cr-00362-TDS   Document 23   Filed 12/17/01   Page 56 of 62

## COUNT THIRTY-TWO

1. The Grand Jury realleges and incorporates by reference Paragraphs One through Six of Count One, Paragraphs Two through Twenty-nine of Count Two, and Paragraphs Two and Three of Count Twenty-Six as if fully set forth herein.

2. During the period from on or about November, 1996, up to and including October, 2000, the exact dates to the Grand Jurors unknown, in the Middle District of North Carolina, and elsewhere,

> JAMES ANTHONY SAVAGE,
>       also known as Mario J. Racanelli,
>       John Racanelli, Mark Racanelli,
>       Grandoni Egistot, Egisto Grandoni,
>       Robert Toliano, M. John Delano,
>       Greg Eric Masonotti, and Max Marrache,
> MARGARET NATHALIE HANDSMAN,
>       also known as Marnie Handsman,
>       Margaret Racanelli, and Marnie Racanelli,

defendants herein, together and with divers other persons to the Grand Jurors both known and unknown, did wilfully, knowingly and unlawfully combine, conspire, confederate and agree together and with each other to commit various offenses against the laws of the United States, that is, to knowingly engage in monetary transactions in criminally derived property of a value of over ten thousand dollars ($ 10,000), from a specified unlawful activity, namely mail fraud and wire fraud, and inducing the travel of persons in interstate commerce in the execution of a scheme to defraud, in violation of Title 18, United States Code, Section 1957(a).

- 57 -

## OVERT ACTS

In furtherance of and to effect the objects of said Conspiracy and to accomplish its purposes and objects thereof, in the State and Middle District of North Carolina, and elsewhere,

      JAMES ANTHONY SAVAGE,
          also known as Mario J. Racanelli,
          John Racanelli, Mark Racanelli,
          Grandoni Egistot, Egisto Grandoni,
          Robert Toliano, M. John Delano,
          Greg Eric Masonotti, and Max Marrache,
      MARGARET NATHALIE HANDSMAN,
          also known as Marnie Handsman,
          Margaret Racanelli, and Marnie Racanelli,

defendants herein, together and with divers other persons to the Grand Jurors both known and unknown, did commit and cause to be committed those financial transactions and other Overt Acts alleged in paragraphs 10, 15, 16, 17, 20, 21, 23, 25, 26, 27, 30, 31, 32, 33, 34, 35, 37, 38, 41, 42, 43, 44, 45, 46, 48, 49, and 50 of Count One of this Indictment.

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE ALLEGATION

1. The allegations contained in Counts Twenty-Six through Thirty-Two are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 982.

- 58 -

2.     As a result of the offenses alleged in Counts Twenty-Six through Thirty-Two, the defendants JAMES ANTHONY SAVAGE and MARGARET NATHALIE HANDSMAN shall forfeit to the United States any and all property, real or personal, involved in the aforesaid offenses and all property traceable to such property, including but not limited to the following:

    a.   <u>Cash Proceeds</u>

Approximately seven million dollars ($ 7,000,000) in United States Currency, in that such sum in aggregate constitutes the proceeds derived from the criminal violation.

    b.   <u>Real Property</u>

All right title and interest in and to that certain plot, piece or parcel of land known as 7309 Pine Needle Road, Sarasota County, Sarasota, Florida, with all appurtenances and improvements thereon, and more particularly described as follows:

> The Northerly 100 feet of Lot 3 and the Southerly 50 feet of Lot 4, together with that portion of Lot 3 lying between Mid Water Way and Pine Needle Road adjacent thereto, Section N, SIESTA PROPERTIES, INC., UNIT NO. 2, as per Plat thereof recorded in Plat Book 5, Page 42, of the Public Records of Sarasota County, Florida.

    c.   <u>Automobiles</u>

    1.   2001 Lexus LX470, VIN JTJHT00W013502454;

    2.   2001 Mercedes Benz BTM, VIN WDBPJ78J41A016861.

    d.   <u>Bank Accounts</u>

Case 1:01-cr-00362-TDS   Document 23   Filed 12/17/01   Page 59 of 62

1.  Account Number 574074998241, Bank of Nevis
    International, Ltd., Post Office Box 450,
    Charlestown , Nevis, West Indies;

2.  Account Number 8290006, Bank of Nevis
    International, Ltd., Post Office Box 450,
    Charlestown , Nevis, West Indies.

3.  Account Number 517795002631192, Banamex
    Internacional

4.  Account Number 5177950021031192, Banamex
    Internacional

5.  Internacional Checking Account No.
    04719047780, Banamex Internacional

3.   If any of the property described above as being subject
to forfeiture, as a result of any act or omission of the
defendants, cannot be located upon the exercise of due diligence;
has been transferred or sold to or deposited with a third person;
has been placed beyond the jurisdiction of the Court; has been
substantially diminished in value; or has been commingled with
other property which cannot be divided without difficulty; it is
the intent of the United States, pursuant to Title 18, United
States Code, Section 982(b)(1), to seek forfeiture of any other
property of said defendants up to the value of the above
forfeitable property, that is seven million dollars ($ 7,000,000),
including but not limited to the following:

a.  Four hundred thousand dollars ($ 400,000) in United
    States currency (cash), plus household furnishings and
    other personal property seized January 12, 2001, from
    Units E6, E8, AB56, AB40, and AC46 at Control Storage,
    Inc., 6720 S. Tamiami Trail, Sarasota, Florida;

- 60 -

b.  Ultra "Humdinger" custom golf cart, household furnishings, electronics, and other personal property seized January 11, 2001, from storage at Gates Moving & Storage Company Warehouse, 2216 60th Drive East, Bradenton, Florida;

c.  20 cases of wine and liquor, golf clubs, auto tires and accessories, electronics, housewares and other personal property seized February 2, 2001, from Unit 1022 at Rochelle Park Public Storage, 168 Route 17 North, Rochelle Park, New Jersey;

d.  One custom mailbox and two Sub zero refrigerators seized February 14, 2001, from unit 972 at Storage USA, 4173 Clark Road., Sarasota, Florida;

e.  Three thousand and three hundred dollars ($ 3,300) in United States currency (cash) seized from the vehicle of defendant JAMES ANTHONY SAVAGE on August 24, 2001;

f.  Mont Blanc Meisterstuck Solitaire white and yellow gold Classique pen seized from the vehicle of defendant JAMES ANTHONY SAVAGE on August 24, 2001;

g.  Rolex Oyster Perpetual Day-Date watch with diamond bezel and diamonds on watch face seized from the vehicle of defendant JAMES ANTHONY SAVAGE on August 24, 2001;

h.  Silver-colored man's ring seized from the vehicle of defendant JAMES ANTHONY SAVAGE on August 24, 2001;

i.  Electronic equipment, watches and jewelry seized August

Case 1:01-cr-00362-TDS   Document 23   Filed 12/17/01   Page 61 of 62

24, 2001 from Apt. #301, Atrium Apartment Building, 424
South Holt Avenue, Los Angeles, California

All in violation of Title 18, United States Code, Section

982(a)(1).

A TRUE BILL:

F'

CLIFTON T. BARRETT
ASSISTANT UNITED STATES ATTORNEY

DOUGLAS CANNON
ASSISTANT UNITED STATES ATTORNEY

ANNA MILLS WAGONER
UNITED STATES ATTORNEY

- 62 -